UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| COURTNEY HOLLIDAY, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>GROUPME, INC., a Delaware corporation,<br><br>*Defendant*. | Case No.<br><br>**COMPLAINT—CLASS ACTION**<br><br>**JURY DEMAND** |

Plaintiff Courtney Holliday ("Holliday" or "Plaintiff") brings this Class Action Complaint against Defendant GroupMe, Inc. ("GroupMe" or "Defendant"), to stop Defendant's practice of making unsolicited text message calls to cellular telephones and to obtain redress for all persons injured by its conduct. Plaintiff, for her Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1. Defendant GroupMe operates a mobile messaging service designed to allow larger groups of consumers to communicate directly.

2. However, by its own design, GroupMe's service does not put in place sufficient safeguards to prevent consumers from being added to a group without their permission, either by someone with whom they have a prior relationship, or by a complete stranger.

3. Once added to a group, which can contain over 100 other people (who may also

COMPLAINT—CLASS ACTION  
Case No.

- 1 -

Corrie Yackulic Law Firm LLC  
705 Second Avenue, #1300  
Seattle, Washington 98104  
Tel: 206.787.1915

1  have no idea how they got there), the unwitting group member can be bombarded with messages
2  from other people in the group.

3    4.  In addition, the consumer receives a variety of automated mass messages from
4  GroupMe itself, including messages stemming from group members' lack of participating in the
5  group. In many instances, a person can receive hundreds of messages in a matter of minutes.

6    5.  If this invasion of personal privacy weren't enough, Defendant's own prompts
7  and instructions to be removed from the group, and thereby stop receiving messages, simply do
8  not work. That is, here, when Plaintiff Holliday and other members of the putative Class
9  responded "#exit" (as instructed by GroupMe), or other industry standard SMS opt-out
10 commands (*e.g.*, stop, end, cancel, unsubscribe, exit, or quit), the messages from GroupMe and
11 other group members continued unabated.

12   6.  Finally, after enduring hundreds of texts and failed attempts to be removed, when
13 a group is closed down by the creator, GroupMe makes sure to send one final unwanted
14 promotional text encouraging members to visit its website and create a new group to start the
15 process all over again.

16   7.  Plaintiff Holliday now brings this case on behalf of herself and a putative Class
17 (defined below) seeking injunctive relief, as well as an award of actual and statutory damages,
18 along with costs and reasonable attorneys' fees.

19             **PARTIES**

20   8.  Plaintiff Holliday is a natural person and citizen of the State of Kansas.
21   9.  Defendant GroupMe, Inc. is a corporation existing under the laws of the State of
22 Delaware whose principal executive office is located at One Microsoft Way, Redmond,
23 Washington, 98402. GroupMe does business throughout the United States, including in the State
24 of Washington and this District.

25           **JURISDICTION AND VENUE**

26   10.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
27 §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227

COMPLAINT—CLASS ACTION  
Case No.  
- 2 -  
Corrie Yackulic Law Firm LLC  
705 Second Avenue, #1300  
Seattle, Washington 98104  
Tel: 206.787.1915

1  ("TCPA") a federal statute.

2  11. The Court has personal jurisdiction over Defendant because Defendant's principal executive office is located in the State of Washington, it regularly conducts business in the State of Washington and in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

**The GroupMe App**

13. Mobile messaging applications are quickly becoming a mainstay in the world of mobile communications. Defendant GroupMe offers one such service (the "App"), which allows a single person or entity to create a "group" of message recipients, and then request that GroupMe simultaneously transmit text message calls to every member of the group. The App then allows each group member to respond to all other members of the group with a single message.

14. GroupMe introduced the App through its website, GroupMe.com, in or around August 2010. The App is marketed as a "group texting" tool, allowing customers to request that GroupMe simultaneously transmit text message calls to large groups of people *en masse*, using one common cellular telephone number provided by Defendant.

15. To use the App, a customer signs up by providing basic information through the GroupMe website or mobile application, and then creates a texting "group" by entering the cellular telephone numbers of each proposed member to GroupMe.

16. GroupMe does not attempt, in any way, to obtain the consent of consumers that are added to a texting group. This results in numerous consumers being added to groups without their authorization or express consent. After being forced into these groups, consumers are then subjected to a multitude of unwanted text message calls.

COMPLAINT—CLASS ACTION
Case No.
- 3 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

**A GroupMe Chat Experience**

17. The moment a group creator creates a GroupMe texting group, GroupMe instantly sends every member of the new group two text messages.

18. The first text message includes a notification that the consumer has been added to a group and identifies how many other individuals are in that particular group.

19. The second text message advertises GroupMe's messaging App and contains instructions for opting-out of receiving future text messages from the group. Specifically, GroupMe instructs consumers that they can opt-out in its initial text messages by "Reply[ing] #exit to leave the group."

20. Once a group is created and group members receive the initiating messages, they too can respond to everyone else in the group an unlimited number of times, creating an ongoing "chat room" effect of nearly constant text messages. Because the messages come from a unique phone number provided by GroupMe, and the group creator can easily input a fake name, the resulting chat room can quickly devolve into an uncontrollable flurry of text messages that is fueled by unwilling group members questioning what the group is, who the creator is, how they were made a part of the group, and how to make the text messages stop.

**GroupMe's Inactivity Messages**

21. GroupMe further fuels this frenzy by sending a barrage of administrative text messages to the entire group—all without the group members' consent—causing each group member to receive a slew of additional unwanted text messages. GroupMe begins to unilaterally generate and send automated text messages to the group members informing each member that other members are not responding and will be removed from the group (the "Inactivity Messages"(messages substantially similar to those appearing in Figures 1-3 below)). After a group member has been inactive for the predetermined period, GroupMe sends the group member the first Inactivity Message. This automated text message warns the member that GroupMe will stop sending them messages unless the user replies to the group. *See* Figure 1.

COMPLAINT—CLASS ACTION
Case No.
- 4 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

> Are you there? GroupMe is better when you participate. We'll stop sending you messages soon unless you reply to the group or text #stay. Reply #exit to leave.

(**Figure 1**.)

22. This automated warning message is unilaterally and independently sent by GroupMe, and without the intervention, input, or command of any group member or the group creator.

23. After receiving the initial Inactivity Message, if the inactive group member fails to reply, GroupMe will supposedly remove the member from the group after another predefined period of inactivity has passed.

24. As GroupMe removes the inactive group member, it also sends two additional automated Inactivity Messages: one to the removed group member, and one to the rest of the group.

25. First, GroupMe sends an automated Inactivity Message to the removed group member notifying them that they have been removed from the group, and providing instructions on how to re-enter the group. *See* Figure 2.

> We haven't heard from you so we're going to stop sending messages from this group. Don't worry, you can start getting messages again by replying to this text.

(**Figure 2**.)

26. Second, GroupMe simultaneously sends an automated Inactivity Message to *every other member of the group*, informing them that the inactive group member has been removed. *See* Figure 3.

COMPLAINT—CLASS ACTION
Case No.
- 5 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

> Case is new to GroupMe and hasn't responded, so we stopped sending them messages from this group.

(**Figure 3**.)

27. GroupMe unilaterally sends these automated Inactivity Messages without the input or command of any member of the group or the group creator, and without the consent of the recipients.

**GroupMe's Ignores Requests to Opt-Out of Group Chats**

28. Making matters much worse, not only do thousands of consumers receive unconsented-to and unwanted text message calls from and through the App, but they are also forced to endure the deluge of text messages because the App's opt-out mechanism did not and/or does not work.

29. When a consumer replies #exit, as instructed by GroupMe itself, GroupMe's systems acknowledge the request and informs the rest of the group's members that the consumer has left. Unfortunately, despite the consumer's request and GroupMe's acknowledgement of such, the consumer *continues* to receive text messages in the group, including numerous Inactivity Messages from GroupMe directly. This conduct stands in direct opposition to GroupMe's duty to honor each opt-out request as a termination of any supposed prior consent.

30. This results in consumers being trapped in a messaging group that they never wanted to be a part of, and are then forced to receive dozens of automated text messages sent by GroupMe.

31. Ironically, the more that group members attempt to make the texts stop and get out of a group—by texting stop, end, cancel, unsubscribe, quit, exit, and #exit, etc.—the longer they perpetuate their membership. Because GroupMe's opt-out mechanism fails to work, any text message sent by a group member can constitute activity in the group, thereby preventing that member from being removed for inactivity and forcing the receipt of additional automated text messages from GroupMe.

COMPLAINT—CLASS ACTION
Case No.
- 6 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

32. GroupMe knows, or acts in conscious disregard of the fact that automated text messages sent after an opt-out request is made—such as its Inactivity Messages—are unauthorized. Requests using #exit or other industry standard opt-out requests are, by design, sent to GroupMe, thereby directly informing it that any subsequent text messages are made without the recipient's consent. Ultimately, consumers are forced to bear the costs and annoyance of receiving these unsolicited and unauthorized text messages.

**GroupMe Utilizes an Automatic Telephone Dialing System**

33. GroupMe made the Inactivity Message text message calls to Plaintiff and members of the putative Class using an automatic telephone dialing system equipment that stores or produces telephone numbers, and dials such numbers *en masse* without human intervention.

34. Specifically, (1) GroupMe's equipment and software stores telephone numbers in a database; (2) GroupMe created and automatically selected the content of the Inactivity Messages from pre-determined, nearly identical messages without human intervention; (3) GroupMe designed its servers to communicate with a third-party's servers by using an application programming interface ("API"), without human intervention, for the purpose of sending the Inactivity Messages; (4) using that API, GroupMe sends telephone numbers and the Inactivity Messages content to the third party without human intervention; and (5) GroupMe instructs the third-party to send the Inactivity Messages automatically and in quick succession to cellular telephone numbers, all without human intervention.

35. In fact, by definition and as described herein, the Inactivity Messages are only sent by GroupMe—and according to variables only determined and known by GroupMe—when group members *don't do anything at all*. The Inactivity Messages are therefore GroupMe's system automatically responding to *a lack of human intervention* by sending Inactivity Messages.

36. Defendant was and is aware that the above described Inactivity Messages were and are being sent without the prior express consent of the recipients after a clear request to opt-out of receiving any such messages.

COMPLAINT—CLASS ACTION
Case No.
- 7 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

**FACTS SPECIFIC TO PLAINTIFF HOLLIDAY**

37. On or around March 22, 2017 at 10:29 pm Plaintiff Holliday received a text message from the phone number 857-574-5342 stating "You've been added to "Friends" with Travis Bissell, Sam B, Aaron, Alan, and 130 others on GroupMe. Reply to Chat!" Plaintiff did not recognize any of the names included in the group as anyone that she knew.

38. Plaintiff then received the second group opening message stating: "Group messaging by GroupMe. Message and data rates may apply. Reply #exit to leave the group. Learn more at https://groupme.com/learn-more."

39. After the second message, Plaintiff began to receive a multitude of unsolicited text messages from GroupMe over the next several minutes.

40. These text messages were notifications generated by GroupMe, including Inactivity Messages, which GroupMe sent to Plaintiff's and the Class's phones.

41. To provide a few examples, Plaintiff received the following text messages:

- Carlos is new to GroupMe and hasn't responded, so we stopped sending them messages from this group.

- Are you there? GroupMe is better when you participate. We'll stop sending you messages soon unless you reply to the group or text #stay. Reply #exit to leave.

- We haven't heard from you so we're going to stop sending messages from this group. Don't worry, you can start getting messages again by replying to this text.

42. Indeed, Holliday received as many as *52 Inactivity Messages* from GroupMe in the first three minutes following the group's creation, and many more thereafter.

43. These Inactivity Messages were substantially similar to those discussed above and featured in Figures 1, 2, and 3.

44. Plaintiff Holliday never consented to being included in the group and was forced to receive dozens of messages from other group members who likewise wanted to leave the group after its creation. But, by sending the Inactivity Messages at issue, GroupMe forced Holliday's receipt of dozens of additional unconsented-to automated text messages on her cellular telephone.

COMPLAINT—CLASS ACTION  
Case No.

- 8 -

Corrie Yackulic Law Firm LLC  
705 Second Avenue, #1300  
Seattle, Washington 98104  
Tel: 206.787.1915

45. Plaintiff Holliday replied #exit at 10:33pm, four minutes after the group was created. Yet despite her opt-out request (that conformed exactly to the instructions specified by GroupMe), Plaintiff received an additional 12 Inactivity Messages from GroupMe after making the request, each sent from the same phone number 857-574-5342. (*See* Exhibit A).

46. But for the creator disbanding the group, there was no foreseeable end to Plaintiff continuing to receive new unwanted messages from GroupMe and other group members.

47. At no time did Plaintiff Holliday consent to the receipt of text message calls of any variety from GroupMe, let alone provide her prior oral or written express consent to Defendant GroupMe to receive such automated messages.

48. GroupMe's intrusive text messages adversely affected Plaintiff's right to privacy. GroupMe was and is aware that the above-described text message calls were being made on a widespread basis and that the text message calls were being made to consumers like Plaintiff who had not consented to receive them. Indeed, the content of the Inactivity Messages identifies that individuals who are removed from the group are "new to GroupMe[,]" and have no prior relationship with Defendant.

## CLASS ALLEGATIONS

49. **Class Definition**: Plaintiff Holliday brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who (1) within the four years preceding the filing of this Complaint, (2) received on their cellular telephone number at least one text message from a phone number assigned to a GroupMe messaging group, (3) replied to the text message with an industry standard opt-out request (*e.g.*, stop, end, cancel, unsubscribe, quit, exit, and/or #exit), and (4) thereafter received at least one Inactivity Message in the same group to which they had replied with an opt-out request.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly

COMPLAINT—CLASS ACTION
Case No.
- 9 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

50. **Numerosity**: On information and belief, tens of thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendant's records, discovery, and other third-party sources.

51. **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    a. whether Defendant's conduct constitutes a violation of the TCPA;

    b. whether Defendant utilized an automatic telephone dialing system to send text messages to members of the Class;

    c. whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

    d. whether Defendant obtained prior express consent to contact any Class members; and

    e. whether members of the Class revoked any previous consent to receive text messages.

52. **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that Plaintiff's and the members of the Class sustained damages arising out of Defendant's wrongful conduct.

53. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class, as Plaintiff and each member of the Class received unsolicited text

COMPLAINT—CLASS ACTION
Case No.
- 10 -
Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

message calls from Defendant. Plaintiff also has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to the Class.

54. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies that Plaintiff challenges apply and affect members of the Class uniformly, and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same.

55. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The harm suffered by the individual members of the Class is likely to have been relatively small compared to the burden and expense of prosecuting individual actions to redress Defendant's wrongful conduct. Absent a class action, it would be difficult if not impossible for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

COMPLAINT—CLASS ACTION
Case No.

- 11 -

Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

56. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

### CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the "Exit" Class)

57. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

58. By sending the Inactivity Messages after Plaintiff and other members of the Class had affirmatively opted-out of the group chat, GroupMe made unauthorized text message calls to the cellular telephone numbers of Plaintiff and the Class.

59. GroupMe made the Inactivity Message text message calls to Plaintiff and members of the putative Class using an automatic telephone dialing system equipment that stores or produces telephone numbers, and dials such numbers *en masse* without human intervention.

60. Specifically, (1) GroupMe's equipment and software stores telephone numbers in a database; (2) GroupMe created and automatically selected the content of the Inactivity Messages from pre-determined, nearly identical messages without human intervention; (3) GroupMe designed its servers to communicate with a third-party's servers by using an application programming interface ("API"), without human intervention, for the purpose of sending the Inactivity Messages; (4) using that API, GroupMe sends telephone numbers and the Inactivity Messages content to the third party without human intervention; and (5) GroupMe instructs the third-party to send the Inactivity Messages automatically and in quick succession to cellular telephone numbers, all without human intervention.

61. In fact, by definition and as described herein, the Inactivity Messages are only sent by GroupMe—and according to variables only determined and known by GroupMe—when group members *don't do anything at all*. The Inactivity Messages are therefore GroupMe's system automatically responding to *a lack of human intervention* by sending Inactivity Messages.

62. Every member of the Class had revoked their consent to receive text messages

COMPLAINT—CLASS ACTION
Case No.                                    - 12 -

Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

from GroupMe by responding with the industry standard SMS codes to opt-out of further communications, such as stop, end, cancel, unsubscribe, quit, exit, #exit, or similar commands.

63. The Inactivity Messages sent to Plaintiff and members of the Class were made after any existing prior consent had been expressly revoked by responding with an opt-out request.

64. Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

65. As a result of GroupMe's unlawful conduct, Plaintiff and the members of the Class suffered actual damages and have also had their rights to privacy adversely impacted. Plaintiff and the Class are therefore entitled to, among other things, a minimum of $500 in statutory damages for each such violation under 47 U.S.C. § 227(b)(3)(B).

66. To the extent GroupMe's misconduct is determined to be willful or knowing, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

67. Additionally, as a result of GroupMe's unlawful conduct, and because such conduct is capable of repetition and ultimately unavoidable by message recipients, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that GroupMe's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Courtney Holliday, on behalf of herself and the Class, prays for the following relief:

1. An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Holliday as the representative of the Class and appointing her attorneys as Class Counsel;
2. An award of actual and statutory damages;
3. An injunction requiring Defendant to cease all unsolicited text messaging and to honor opt-out requests, and otherwise protecting the interests of the Class;
4. An award of reasonable attorneys' fees and costs; and

COMPLAINT—CLASS ACTION
Case No.

- 13 -

Corrie Yackulic Law Firm LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

5. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**COURTNEY HOLLIDAY**, individually and on behalf of all others similarly situated,

Dated: April 24, 2018

By: *[signature]*
One of Plaintiff's Attorneys

Corrie J. Yackulic
CORRIE YACKULIC LAW FIRM LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915

Benjamin H. Richman*
brichman@edelson.com
Michael Ovca*
movca@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1400
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Fl 33131
Tel: 877.333.9427
Fax: 888.498.8946

**Pro hac vice* admission to be sought.*

*Attorneys for Plaintiff and the Putative Class*

COMPLAINT—CLASS ACTION
Case No.

- 14 -

CORRIE YACKULIC LAW FIRM LLC
705 Second Avenue, #1300
Seattle, Washington 98104
Tel: 206.787.1915